*The Law Offices of Shimshon Wexler, PC*
*PO Box 250870*
*New York, New York 10025*
*Tel (212)760-2400*
*Fax (917)512-6132*
swexleresq@gmail.com

January 14th, 2013

VIA CM/ECF
Hon. Leonard D. Wexler, U.S.D.J.
U.S. District Court
Eastern District of New York
Long Island Federal Courthouse
944 Federal Plaza
Central Islip, New York 11722

RE:   Katz v. Empire National Bank
      E.D.N.Y. Case No. 12-CV-5224-LDW-GRB

Dear Judge Wexler:

    I am the attorney for the plaintiff in this action. I write in accordance with your Individual Rules as well as in response to the Defendant's pre-motion letter. This case involve the Defendant not providing a notice posted on or at the machine at 3 of its ATMs and therefore charged an illegal fee each time. Plaintiff brings this action on behalf of a class.

    The Electronic Fund Transfer Act (EFTA) prohibits ATM operators from imposing fees for ATM cash withdrawals unless they provide prior notice of the fee in a specific manner. 15 U.S.C. § 1693b(d)(3)(A), (C). First, the ATM operator must provide on-machine notice "posted in a prominent and conspicuous location on or at the automated teller machine." *Id.* § 1693b(d)(3)(B). Second, the ATM operator must provide a separate on-screen notice "after the transaction is initiated and before the consumer is irrevocably committed to completing the transaction." *Id.*

    Congress intended both forms of notice to encourage competition among ATM operators and protect consumers by ensuring they are adequately notified of the fees they will be charged. But unlike the on-screen notice, which consumers will not receive until their transaction is almost complete, the on-machine notice ensures that a consumer is informed of the fee *before* spending the time necessary to wait in line, provide a card and security code, and navigate the ATM's screens to identify a transaction. As Congress recognized, on-machine notice is essential to achieving the statute's purposes because, after investing that time, "[i]t is not realistic" to expect consumers to abandon their transactions and search for another ATM. *Fair ATM Fees for Consumers Act, S. 1800: Hearing Before the Senate Committee on Banking, Housing & Urban Affairs*, 104th Cong., at 3 (1996).

I.    Defendant has offered 2 reasons why this complaint should be dismissed. Both of them lack any merit:

      1- "Without an actual injury, Plaintiff's complaint must be dismissed under Rule 12(b)(1) for lack of standing";

      2- "Plaintiff's Complaint must be dismissed under Rule 12(b)(6) for failure to state a claim because Congress amended the EFTA specifically to prohibit this type of suit."

A.     Defendant first contends that Plaintiff is not entitled to the statutory damages provided for in the statute because he has suffered no actual injury and thus lacks standing.

      Plaintiff has standing to sue in this case for the following 3 reasons:

      The first reason plaintiff has a "direct stake" in this cases is straightforward—the defendant charged him transactional fees that, by law, it was not permitted to charge. EFTA provides that "*[n]o fee may be imposed* by any automated teller machine operator" unless the notices required by the statute—including on machine notice—are first provided to the consumer. 15 U.S.C. § 1693b(d)(3)(C) (emphasis added). The statute thus provides banks with a choice: Either charge a fee and provide the notice required by statute, or provide no notice and charge no fee. The defendants here, however, charged a fee *without* providing the required notice, and, thus, charged Plaintiff a fee that the statute prohibits.

      The "expenditure of funds" is "the most mundane of injuries of fact." *Amnesty Int'l USA v. Clapper*, 638 F.3d 118, 133 (2d Cir. 2011), *cert. granted*, 132 S. Ct. 2431. Plaintiff alleged such an injury here. Article III requires only that a plaintiff be "adversely affected" or "aggrieved" by a defendant's conduct. *Nat'l Wildlife Fed'n*, 901 F.2d at 677. In meeting that requirement, even an "identifiable trifle" is sufficient. *Id.* An actual out-of-pocket cost attributable to a defendant's conduct—no matter how small—is thus necessarily sufficient to establish Article III standing. *See United States v. Students Challenging Regulatory Agency Procedures (SCRAP)*, 412 U.S. 669, 689 (1973) ("We have allowed important interests to be vindicated by plaintiffs with no more at stake in the outcome of an action than a fraction of a vote, ... a $5 fine and costs, ... and a $1.50 poll tax.").

      Secondly, Plaintiff was entitled to receive information of the ATM fee in the form and manner that Congress stated. Because Defendant failed to give Plaintiff this information, Plaintiff has an injury in fact. In light of Congress's intentional adoption of a dual-notice scheme, every court to consider the issue—other than the district court decision cited in defendant's letter—has held that failure to provide the on-machine notice required by EFTA constitutes an injury for Article III purposes even in the absence of monetary damages. *See, e.g., Bell v. First Bank Richmond*, No. 12-965, 2013 U.S. Dist. LEXIS 2400 (S.D. Ind. Jan. 7, 2013); *Mabary v. Hometown Bank, N.A.*, No. 10-3936, 2012 WL 3765020 (S.D. Tex. Aug. 30, 2012); *Zabienski v. ONB Bank & Trust*, No. 12–130, 2012 WL 3583020, at *1 (N.D. Okla. Aug. 20, 2012); *Sucec v. The Greenbrier*, No. 11-0968, 2012 WL 3079233 (S.D.W. Va. July 10, 2012), *report and recommendation adopted*, 2012 WL 3079212 (S.D.W. Va. July 30, 2012); *Campbell v. Hope Cmty. Credit Union*, No. 10–2649, 2012 WL 423432 (W.D. Tenn. Feb. 8, 2012); *Kinder v. Dearborn Fed. Sav. Bank*, No. 10-12570, 2011 WL 6371184 (E.D. Mich. Dec. 20, 2011); *Regions Bank*, 2011 WL 4036691. As the district court wrote in *Regions Bank*, "Congress created a statutory right to a particular form of notice" under EFTA, and a defendant's failure to provide that notice to the plaintiff "is a concrete, particular injury" under Article III. *Id.*

Lastly, even if Plaintiff could not establish an Article III injury based on his payment of illegal fees and the defendant's failure to provide the required notice, he nevertheless has standing because the EFTA includes a private-enforcement provision that entitles him to statutory damages. Because legal injury is by definition no more than the violation of a legal right and legal rights can be created by the legislature, standing's existence in a given case is largely within the control of Congress. "Congress may enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute." *Hardin v. Ky. Utils. Co.*, 390 U.S. 1, 6 (1968).

B.   Defendant next attempts to argue that because a change in the law has taken place, plaintiff's claims should be extinguished because the law no longer gives plaintiff the right to both forms of notice. However, when plaintiff made his claim, the law was that plaintiff had a claim.

Defendant acknowledges that it has a very high burden to meet in order to impair plaintiff's rights as they existed at the time of his injury citing *Landgraf v. USI Film Products*, 511 U.S. 244 (1994). Under *Landgraf*, Plaintiff's claim would be extinguished only if the statute had clear congressional intent to bar Plaintiff's claim. In our case, that did not happen. Defendant cites for the proposition that the bill passed has clear congressional intent to apply retrospectively from the Performance Goals and Objectives section of the bill that the second objective of H.R. 4367 is to protect ATM operators from lawsuits related to this notice requirement. However, this is clearly a forward looking statement saying that 'banks don't need to worry about fee notice lawsuits as a result of this bill passing', but before the bill passes they do have to comply with this notice requirement.

When the law which prohibits merchants from printing an expiration date and/or too many digits of a customer's credit card number on a receipt provided to the customer was changed for a brief period to allow merchants to avoid lawsuits for printing an expiration date of the credit card number, the law made it clear that outstanding lawsuits would be extinguished by stating the following:

> (d) **Clarification of willful noncompliance**
>
> For the purposes of this section, any person who printed an expiration date on any receipt provided to a consumer cardholder at a point of sale or transaction between December 4, 2004, and June 3, 2008, but otherwise complied with the requirements of section 1681c (g) of this title for such receipt shall not be in willful noncompliance with section 1681c (g) of this title by reason of printing such expiration date on the receipt.

In this case, the portion of the law which requires the posting of the notice was deleted from the law after plaintiff's cause of action arose. The law prior to then, which was that there must be a notice advising of the fee, is still in effect for a plaintiff whose rights were violated prior to the new law taking effect such as the plaintiff in this case.

Shimshon Wexler